**IT IS ORDERED as set forth below:**

Date: May 17, 2023



_____
**Wendy L. Hagenau**
**U.S. Bankruptcy Court Judge**

_____

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 22-58929-WLH |
| GIRISH JASHVANTRAI MODI, | CHAPTER 7 |
| Debtor, | |

### ORDER DENYING DEBTOR'S MOTION FOR SANCTION OF TRUSTEE MR. GORDON

**THIS MATTER** is before the Court on the Debtor's Motion for Sanction of Trustee Mr. Gordon (Doc. No. 84), as supplemented (Doc. No. 86) (the "Motion").

Debtor Girish Jashvantrai Modi ("Modi") filed for relief under Chapter 13 of the Bankruptcy Code on November 3, 2022. On January 17, 2023, Modi filed a First Request to Convert from Chapter 13 to Chapter 7 (Doc. No. 30). The case was converted to one under Chapter 7 on January 17, 2023. That same day, the Clerk's Office issued a Notice of Chapter 7 Bankruptcy Case (Doc. No. 35). Neil C. Gordon was appointed as Chapter 7 Trustee.

Mr. Gordon, as Chapter 7 Trustee, conducted the Section 341 meeting ("341 Meeting") on

1

February 23, 2023, after which he became the permanent trustee pursuant to 11 U.S.C. § 702(d). Also on February 23, 2023, the Trustee filed a Report of Assets (Doc. No. 47), and an Application to Employ his law firm, Taylor English Duma LLP, as Attorneys for Chapter 7 Trustee (Doc. No. 47) (the "Application"). The Court scheduled the Application for a hearing on April 4, 2023.

On February 28, 2023, the Trustee filed a complaint to avoid, recover, and preserve for the estate certain pre-petition transfers of real property pursuant to sections 544, 550, and 551 of the Bankruptcy Code (AP 23-5027).

Meanwhile, Modi filed several motions including a Motion for Leave to Change Deed (Doc. No. 50) and a Request to Deny Discharge and Close Case (Doc. No. 66). The Court held a hearing on his requests on April 4, 2023, which it continued to April 11, and again to April 18, 2023. At the hearing on April 18, 2023, Modi appeared by video and stated he wished to dismiss his case. There were no objections to dismissal. Accordingly, the Court granted Modi's request to voluntarily dismiss the above-styled bankruptcy case, and the case was dismissed on April 19, 2023 (Doc. No. 83).

Modi filed the Motion on April 20, 2023. He seeks sanctions against Neil C. Gordon, the Chapter 7 Trustee, pursuant to Bankruptcy Rule 9011(c), section 105 of the Bankruptcy Code, and the Court's inherent power. Modi contends the Trustee should be sanctioned for his conduct during Modi's section 341 meeting, filing pleadings misrepresenting what was said at the section 341 meeting, hiring a realtor before counsel was approved, filing the Application, filing the adversary proceeding, contacting and negotiating with an account obligor and his attorney and disclosing terms of a proposed settlement with the obligor to the Court which Modi found insufficient, appointing himself as the permanent Chapter 7 Trustee, filing a frivolous pleading at Doc. No. 73, failing to withdraw certain previously filed pleadings, and adding his name to state court

2

garnishment proceedings.

Debtor filed Supplemental Grounds for Sanction of Trustee Mr. Gordon (Doc. No. 86) on May 4, 2023. Modi contends the Trustee created additional work for himself and his law firm so he could make more money. Modi requests a monetary fine of $5,000, plus disbarment of six months.

Modi also requests a hearing. Bankruptcy courts have the discretion to decide an issue without holding an evidentiary hearing. In re Gordon, 577 B.R. 38, 49–50 (S.D.N.Y. 2017). A bankruptcy court does not abuse its discretion in reaching a decision without holding an evidentiary hearing where "the record provided ample evidence on which the court could make such a decision." Id. (citation omitted). It is well settled that a person facing possible sanctions is entitled to due process, *i.e.* notice and an opportunity to be heard. See In re Reeves, 372 B.R. 525, 528 (Bankr. N.D. Ga. 2007). But due process does not require a hearing on a sanctions motion absent disputed facts or issues of credibility—the opportunity to respond by filing opposition papers may suffice. See Gordon, 577 B.R. at 49–50; Ray A. Scharer & Co. v. Plabell Rubber Prod., *Inc.*, 858 F.2d 317, 321 (6th Cir. 1988) ("We do not, in so holding for due process purposes, indicate. . . a 'full fledged' hearing is mandated"); Banner v. City of Flint, 99 F. App'x 29, 37 (6th Cir. 2004) (explaining that, when exercising its inherent authority, a court must "give . . . minimal procedural protections, but no hearing is required 'when the court has sufficient relevant information, including pleadings or materials filed in the record, to decide'"); Resolution Trust Corp. v. Dabney, 73 F.3d 262, 268 (10th Cir.1995) ("An opportunity to be heard does not require an oral or evidentiary hearing on the issue; the opportunity to fully brief the issue is sufficient to satisfy due process requirements."). Where, as here, the Court has reviewed the relevant information and the material facts relevant to Modi's contentions are not in dispute, there is no

3

need for a hearing.

    I.    <u>Rule 9011</u>

        a.  <u>Law</u>

An attorney who represents a party is required to sign "[e]very petition, pleading, written motion, and other paper, except a list, schedule, or statement, or amendments thereto". Fed. R. Bankr. P. 9011(a). Moreover,

> By presenting to the court (whether by signing, filing, submitting or later advocating) a petition, pleading, written motion, or other paper, an attorney ... is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Bankr. P. 9011(b).

"The purpose of Rule 9011 is to deter litigation abuse and unnecessary filings." <u>In re Addon Corp.</u>, 231 B.R. 385, 388 (N.D. Ga. 1999). The rule is meant "to dissuade litigants, those represented and unrepresented, from presenting matters to the court that are baseless or filed in bad faith." <u>Artho v. Happy State Bank (In re Artho)</u>, 2018 WL 4631761, at *5 (Bankr. N.D. Tex. Sept. 24, 2018) (citing <u>Law v. Siegel</u>, 571 U.S. 415, 427 (2014)).

The procedures for filing a motion for sanctions for violation of Rule 9011(b) are specific, in order to provide the respondent adequate notice of the motion and an opportunity to resolve the

4

offending pleading before suffering sanctions. The first condition is that a request for sanctions by a party other than the Court must be instigated by serving a motion "made separately from other motions or requests," and "describing the specific conduct alleged to violate" Fed. R. Bankr. P. 9011(c)(1). Such service must be in accordance with Bankruptcy Rule 7004. Bankruptcy Rule 9011(c) requires that service of the motion on the respondent occur at least 21 days prior to filing the motion so the respondent has an opportunity to correct whatever mistakes have been made. Fed. R. Bankr. P. 9011(c)(1)(A). The courts refer to this 21-day period as the "safe harbor period". Thomas v. Office of the Tenn. AG (In re Thomas), 2020 WL 6874912, at *5 (B.A.P. 6th Cir. Nov. 23, 2020). The purpose of the safe harbor requirement is to ensure that the party against whom sanctions are sought has an opportunity to correct the problem. As the Seventh Circuit put it: "[t]o mix naval metaphors, the party seeking sanctions must first fire a warning shot that gives the opponent time to find a safe harbor." N. Illinois Telecom, Inc. v. PNC Bank, N.A., 850 F.3d 880, 882 (7th Cir. 2017). Failure to comply with the requirement is determinative: no sanctions can be awarded if the motion fails to comply with the 21-day safe harbor provision. See Gwynn v. Walker (In re Walker), 532 F.3d 1304, 1308 (11th Cir. 2008).

Further, a Rule 9011 motion is not proper if the Court addressed the complained of behavior within 21 days. As the Eleventh Circuit explained in Huggins v. Lueder, Larkin & Hunter, LLC, 39 F.4th 1342 (11th Cir. 2022), "if the court eliminates the opportunity to withdraw or correct the challenged filing by ruling on it before the safe harbor period expires. . . the sanctions motion cannot be filed." Id. at 1346.

Only certain conduct comes within the ambit of Rule 9011. By its terms, Rule 9011 applies to a "petition, pleading, written motion, or other paper" presented to the Court. Fed. R. Bankr. P. 9011. Without such a predicate act, there is no violation of Rule 9011. In re Aston-Nevada Ltd.

P'ship, 391 B.R. 84, 104 (Bankr. D. Nev. 2006), vacated on other grounds, 409 F. App'x 107 (9th Cir. 2010). For example, conduct of an attorney during a Rule 2004 examination does not involve signing any pleading with the court and does not come within the ambit of Rule 9011. See id.

Assuming a Rule 9011 motion is procedurally proper and the acts complained of are within the scope of Rule 9011, the rule requires the Court to make an objective determination of whether a party's conduct was reasonable under the circumstances. In re Funaro, 263 B.R. 892, 903 (B.A.P. 8th Cir. 2001). Rule 9011 requires only that an attorney make a reasonable inquiry prior to filing a complaint or other pleading. Id.

Further, if sanctions are appropriate, the nature of the sanctions is within the Court's discretion. Rule 9011 itself states that any sanction "shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated". Fed. R. Bankr. P. 9011(c)(2). Even though monetary sanctions can be awarded, a *pro se* litigant, such as Modi, cannot be awarded attorney's fees as a sanction. Massengale v. Ray, 267 F.3d 1298, 1303 (11th Cir. 2001). Courts may consider a variety of factors in determining the appropriate sanction including the procedural posture of the case, the amount needed to deter similar activity by other litigants, the nature of the litigation, and the ability of the sanctioned party to pay. See Colorado Chiropractic Council v. Porter Mem'l Hosp., 650 F. Supp. 231, 243 (D. Colo. 1986); In re Am. Telecom Corp., 319 B.R. 857, 873 (Bankr. N.D. Ill. 2004); Fed. R. Bankr. P. 9011 advisory committee's note to 1983 amendment. In choosing a sanction "the least severe sanction [that is] adequate to serve the purpose should be imposed." Cabell v. Petty, 810 F.2d 463, 466 (4th Cir. 1987).

    b. Application of Rule 9011 to the Motion

Here, the Motion is not procedurally proper. Rule 9011(c)(1)(A) requires a party seeking

6

sanctions under Rule 9011 to first serve a proposed motion on the opposing party and to give that party at least 21 days to withdraw or correct the offending matter. Only after 21 days have passed may the motion be filed. Here, Modi did not send the proposed motion for sanctions to the Trustee 21 days before it was filed. Additionally, the case was dismissed, thereby eliminating the opportunity for Mr. Gordon to withdraw or correct the challenged filings before the expiration of the 21-day safe harbor. Huggins, 39 F.4th at 1346. The Motion does not comply with the 21-day safe harbor provision and, accordingly, no sanctions can be awarded and the Motion is denied.

Further, many of the actions complained of in the Motion are not proper for a Rule 9011 motion because they do not involve a pleading. The Motion complains about the Trustee's conduct during the section 341 meeting, the Trustee becoming the permanent Trustee, his investigation of assets, hiring a realtor, negotiating with an account obligor and his attorney, and disclosing settlement terms (unacceptable to Modi). This conduct does not involve signing any pleading or presenting to the Court a petition, pleading, written motion, or other paper. Without such a filing, there is no violation of Rule 9011. Accordingly, this conduct of which Modi complains does not come within the ambit of Rule 9011.

Also, under Bankruptcy Rule 9011, the Court cannot sanction conduct that occurred in other state and federal courts. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 406 (1990); see e.g., Worldwide Primates, Inc. v. McGreal, 26 F.3d 1089, 1091 (11th Cir. 1994) (complaint, which was filed in state court, cannot be the basis of a Rule 11 violation). Rule 11 sanctions must be based on a pleading, motion, or other paper signed and filed in federal court, and "[a] motion for sanctions should be made to the . . . court in which the alleged violation occurred[.]" § 1337.1 Procedural Aspects of Rule 11 Motions—Initiation and Timing of Sanction Proceedings, 5A Fed. Prac. & Proc. Civ. § 1337.1 (4th ed.); see also Dahnke v. Teamsters Loc. 695, 906 F.2d 1192, 1199

7

(7th Cir. 1990). "The Rule does not license a [ . . . ] court to sanction any action by an attorney or party that it disapproves of, McMahon v. Shearson/Am. Exp., Inc., 896 F.2d 17, 22 (2d Cir. 1990), and it "is not a panacea intended to remedy all manner of [ . . . ] misconduct." Zaldivar v. City of Los Angeles, 780 F.2d 823, 829 (9th Cir. 1986). Accordingly, the Court cannot sanction the Trustee under Rule 9011 for adding his name to state court pleadings.

Matters of which Modi complains that involve filing a pleading are: filing an adversary proceeding, filing the Application, filing Doc. No. 73 (Supplemental Objection to Debtor's Emergency Motion to Dismiss Chapter 7 Case), and filing a report about the section 341 meeting with "false assertions." Even if Modi complied with the procedural requirements of Rule 9011, the actions complained of are not violations of Rule 9011.

To the extent the Motion complains of the Trustee filing an adversary proceeding, the Motion does not state grounds for sanctions. The Trustee was tasked with investigating the financial affairs of the debtor, 11 U.S.C. § 704(a)(4), and using the avoidance powers under sections 544, 545, 547, and 548, to the extent a purported lien is invalid or could be avoided by the trustee. Handbook for Chapter 7 Panel Trustees, Department of Justice (Oct. 1, 2012) ("Handbook"), p. 35. Modi takes issue with the speed with which the Trustee filed the adversary proceeding, but Rule 9011 requires only that an attorney make a reasonable inquiry prior to filing a complaint. A trustee does not violate Rule 9011 where he has a reasonable basis to file an avoidance action, even if he is not ultimately successful on the merits. Funaro, 263 B.R. at 903. The facts pled in the complaint reflect an adequate pre-filing investigation. In the hearings held on April 4, 11, and 18, 2023, Modi's statements reflected a complete lack of understanding of the Trustee's role and obligation and his avoidance powers. Modi's protestations that he did not intend to defraud anyone or that he made a mistake in the execution of certain documents are not relevant

8

to the claim pled by the Trustee. No basis has been pled to justify sanctions against the Trustee for filing the adversary proceeding even if all procedural requirements were met.

Modi also contends the Trustee should be sanctioned for filing the Application. Section 327(a) of the Bankruptcy Code provides that, with the bankruptcy court's approval, the trustee "may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons . . . to represent or assist the trustee in carrying out the trustee's duties" as long as those persons are disinterested and do not hold or represent an interest adverse to the estate. Given that many Chapter 7 trustees are also attorneys, the Bankruptcy Code authorizes trustees to hire themselves to represent the estate in an attorney capacity, so long as doing so is in the best interest of the estate. See 11 U.S.C. § 327(d) ("The court may authorize the trustee to act as attorney or accountant for the estate if such authorization is in the best interest of the estate."). In such circumstances, 11 U.S.C. § 328(b) states, "the court may allow compensation for the trustee's services as such attorney ... only to the extent that the trustee performed services as attorney . . . for the estate and not for performance of any of the trustee's duties that are generally performed by a trustee without the assistance of an attorney or accountant for the estate." The trustee's duties are set out in detail in 11 U.S.C. § 704(a). "The purpose of the attorney for the trustee is  . . to provide assistance with those services the trustee is unable to perform due to the lack of a license to practice law." In re McConnell, 641 B.R. 261, 271–72 (N.D. Ga. 2022).

While Modi contends the Trustee should be sanctioned for filing the Application, the Bankruptcy Code specifically authorizes a trustee, who is an attorney, to seek to employ his law firm as counsel for non-trustee tasks. Thus, filing the Application was not in and of itself improper. In fact, it is typical for a Chapter 7 trustee to employ counsel to pursue an adversary proceeding as "the professional skills of an attorney are required when there is an adversary proceeding or a

9

contested motion[.]" In re Hambrick, 2012 WL 10739279, at *4 (Bankr. N.D. Ga. Apr. 10, 2012). Further, the Court did not immediately grant the Application. Instead, the Court reviewed the Application and set the Application for hearing on April 4, 2023. The Court continued the hearing to April 11, 2023 and April 18, 2023. The Court considered Modi's opposition to the appointment of the Trustee's law firm and the firm's proposed hourly rate. Ultimately, Modi sought to dismiss his case and the Court did not approve the Application. The Court did not grant carte blanche authority to the Trustee to accrue fees or needlessly increase the cost of litigation; it never approved the Application. (No attorney fees are being paid in the case.)

Modi also complains about the Trustee filing the Supplemental Objection to Debtor's Emergency Motion to Dismiss Chapter 7 Case and Response to Debtor's Request for Removal of Trustee (Doc. No. 73). Modi asserts the pleading is frivolous and recites unverified allegations. With respect to "frivolousness," the Court must ask whether a reasonable inquiry would have made the signer aware that the claim was frivolous. In re Mroz, 65 F.3d 1567, 1573 (11th Cir. 1995). A pleading is well-grounded in fact for purposes of Rule 9011 if it has some reasonable basis in fact. In re Szabo Contracting, Inc., 283 B.R. 242, 258 (Bankr. N.D. Ill. 2002). Rule 9011 does not require investigation to the point of absolute certainty. Id. The pleading of which Modi complains, Doc. No. 73, includes copies of documents that support the Trustee's allegations, thereby showing they have some reasonable basis in fact and that the Trustee conducted a reasonable investigation before filing the pleading. Thus, the filing of Doc. No. 73 is not sanctionable conduct.

Finally, Modi alleges the Trustee filed a report about the section 341 meeting containing false assertions. He does not identify the pleading. The Court has reviewed the docket and Mr. Gordon's pleadings and finds only Doc. No. 71 where the section 341 meeting was discussed. In that document, Mr. Gordon says that Modi expressed opposition to a reverse mortgage. Having

10

listened to the section 341 meeting (which was provided by Modi), the Court finds the pleading is warranted and has evidentiary support. No sanctions are appropriate on this pleading.

Having read and considered the Motion, the Court finds that sanctions are not warranted under Rule 9011.

    II.    <u>Other bases for sanctions</u>

        a.  <u>Law</u>

The Court has authority to sanction attorneys who practice before it on bases other than Fed. R. Bankr. P. 9011. Bankruptcy courts have the power to sanction under (1) their statutory civil contempt authority under section 105(a) of the Bankruptcy Code, and (2) their inherent sanction authority. <u>In re BCB Contracting Servs., LLC</u>, 2022 WL 1198232, at *5 (B.A.P. 9th Cir. Apr. 21, 2022), <u>aff'd,</u> 2022 WL 17844674 (9th Cir. Dec. 22, 2022). Pursuant to section 105(a), a bankruptcy court has statutory authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provision of the Code." <u>Law v. Siegel</u>, 571 U.S. 415, 420-21 (2014) (citing 11 U.S.C. § 105(a)). A bankruptcy court also possesses "inherent contempt powers in all proceedings including bankruptcy, to 'achieve the orderly and expeditious disposition of cases,'" <u>Chambers v. Nasco, Inc.</u>, 501 U.S. 32, 43 (1991), and power to sanction abusive litigation practices. <u>BCB Contracting Servs., LLC</u>, 2022 WL 1198232, at *5. There is a difference between these two bases for sanctions.

On the one hand, "[c]ivil contempt authority [pursuant to section 105(a)] allows a court to remedy a violation of a specific order." <u>Knupfer v. Lindblade (In re Dyer)</u>, 322 F.3d 1178, 1196 (9th Cir. 2003). Thus, a court may impose sanctions if a party violates a court order or rule. <u>In re Evergreen Sec., Ltd.</u>, 570 F.3d 1257, 1273 (11th Cir. 2009). "The standard for finding a party in civil contempt is well settled: the moving party has the burden of showing by clear and convincing

11

evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." In re 450 S. Burlington Partners, LLC, 2011 WL 2470102, at *4 (C.D. Cal. June 20, 2011); see also Jove Eng'g Inc. v. Internal Revenue Serv., 92 F.3d 1539, 1545 (11th Cir. 1996)). Accordingly, sanctions are not warranted under section 105(a) where the moving party fails to establish by clear and convincing evidence a violation of a specific and definite order. See e.g., In re 450 S. Burlington Partners, LLC, 2011 WL 2470102, at *4 (C.D. Cal. June 20, 2011). A finding of bad faith is not required to issue sanctions under section 105(a). See BCB Contracting Servs., LLC, 2022 WL 1198232.

On the other hand, "[t]he inherent sanction authority allows a bankruptcy court to deter and provide compensation for a broad range of improper litigation tactics." BCB Contracting Servs., LLC, 2022 WL 1198232, *5 (citing Dyer), 322 F.3d at 1196). In order to impose sanctions under the Court's inherent power, the Court must find bad faith. "A finding of bad faith is warranted where an attorney [or party] knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." Ginsberg v. Evergreen Sec., Ltd. (In re Evergreen Sec., Ltd.), 570 F.3d 125 , 1273-74 (11th Cir. 2009). The Supreme Court has warned, however, that "because of their very potency, inherent powers must be exercised with restraint and discretion." Chambers, 501 U.S. at 44-45.

    b. Application of Section 105 and Inherent Authority to the Motion

Modi asks the Court to exercise its authority under section 105 and the Court's inherent authority to sanction Mr. Gordon. The Motion does not allege Mr. Gordon violated a specific and definite order. Accordingly, sanctions are not warranted under section 105 of the Bankruptcy Code.

12

Sanctions under the Court's inherent authority are also not warranted because the allegations do not support a finding Mr. Gordon acted in bad faith. The role of the trustee is to collect and liquidate the property of the estate and distribute the proceeds to creditors. The specific statutory duties of a trustee are set out in section 704(a), including the duties to: "[c]ollect and reduce to money the property of the estate and close the estate as expeditiously as is compatible with the best interests of parties in interest"; and "investigate the financial affairs of the debtor." 11 U.S.C. § 704(a)(1), (a)(4). The duties enumerated under section 704 are specific, but not exhaustive. The trustee also has a duty to use the trustee's avoidance powers under sections 544, 545, 547, and 548, to the extent a purported lien is invalid or could be avoided by the trustee. Handbook for Chapter 7 Panel Trustees, Department of Justice (Oct. 1, 2012) ("Handbook"), p. 35. The Handbook for Chapter 7 Panel Trustees provides, "[t]he trustee must review the bankruptcy schedules to make a preliminary determination as to whether there appears to be assets in the case or areas warranting further inquiry at the meeting of creditors," and "[a] chapter 7 case must be administered to maximize and expedite dividends to creditors." Handbook, p. 4-1, 33.

Modi argues the Trustee improperly conducted the section 341 meeting of creditors. The Court reviewed the transcript of the section 341 meeting of creditors submitted by Modi and finds no basis to challenge the method in which the Trustee conducted the meeting.

Modi also complains of the Trustee's attempts to negotiate with Virani, an account obligor who owes money to Modi, and Virani's attorney. He also asserts the Trustee wrongfully added his name to Modi's pre-petition state court garnishment actions. Modi does not seem to understand that when he filed bankruptcy, the obligation owed by Virani to Modi became property of the estate and, upon conversion to Chapter 7, the Trustee had the duty to collect it. Section 704 of the Bankruptcy Code states the Trustee's statutory duties include "collect[ing] and reduc[ing] to

13

money the property of the estate for which such trustee serves," "be[ing] accountable for all property received," and "investigat[ing] the financial affairs of the debtor." 11 U.S.C. § 704(a). In fulfilling his duties, it was appropriate for the Trustee to add his name to the state court action as Modi no longer had authority to pursue it. See In re Manton, 585 B.R. 630, 643 (Bankr. N.D. Ga. 2018) (Chapter 7 trustee entitled to intervene in pending actions). At the hearing on April 11, 2023, Modi appeared to be very happy with the Trustee's acts to collect the debt from Virani, but changed his views by the April 18 hearing. Modi has not alleged any basis to sanction the Trustee in connection with his collection efforts.

Modi takes issue with the Trustee disclosing terms of a proposed settlement he negotiated with the Viranis and contends the settlement was insufficient. Compromises are generally favored in bankruptcy. In re Marvelay, LLC, 2019 WL 3334706, at *6 (Bankr. N.D. Ga. July 23, 2019); see, e.g., Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir.1996) (finding that compromises help expedite case administration and minimize litigation). But all settlements in bankruptcy have to be disclosed and approved by the Court. The approval of a settlement under Rule 9019 of the Federal Rules of Bankruptcy Procedure is committed to the discretion of the bankruptcy court. Key3Media Group, Inc. v. Pulver.com Inc. (In re Key3Media Group Inc.), 336 B.R. 87, 92 (Bankr. D. Del.2005). In making its evaluation, the court must determine whether "the compromise is fair, reasonable, and in the best interest of the estate." In re Louise's Inc., 211 B.R. 798, 801 (D. Del. 1997). The Court does not have to be convinced that the settlement is the best possible compromise, but only that the settlement falls within a reasonable range of litigation possibilities. In re Washington Mut., Inc., 442 B.R. 314, 327–28 (Bankr. D. Del. 2011) (citation omitted). In making this determination, the Court as well as the creditors must be made aware of the terms and conditions of the settlement or compromise. In re Waikiki Hobron Assocs., 51 B.R. 406, 408

(Bankr. D. Haw. 1985). An application fully disclosing the terms and conditions must be presented to the court for approval. Thus, the terms of the proposed settlement had to be disclosed. Further, while Modi takes issue with certain terms of the proposed settlement with Virani, a settlement does not have to be the absolute best possible compromise for bankruptcy court approval. Accordingly, the Court finds no grounds for sanctioning the Trustee regarding negotiations with the Viranis.

Modi also complains the Trustee sought to retain a realtor before the Application was approved. Under section 327, a chapter 7 trustee may employ professionals, including realtors, to "represent or assist the trustee" in performing trustee duties under title 11. A trustee may retain a realtor at any time during a case and the Bankruptcy Code has no requirement that counsel first be retained. The Trustee could seek to employ a realtor in his capacity as Trustee, which is contemplated and allowed under section 327. In this case, however, the Trustee never sought to employ a realtor. No grounds exist here for sanctioning the Trustee.

Additionally, Modi takes issue with Mr. Gordon becoming the permanent Chapter 7 Trustee. Again, Modi seems to misunderstand how Chapter 7 works. Section 702(d) provides, if a trustee is not elected by the creditors, the interim trustee automatically becomes the permanent trustee at the time of the meeting of creditors. See 11 U.S.C. § 702(d); Seals v. Abedi (In re Fort Worth Campbell & Assocs.), 182 B.R. 748, 750 (Bankr.N.D.Tex.1995) ("Therefore, section 702(d) automatically causes the appointed interim trustee to become the permanent trustee"). Thus, the "interim trustee, who is appointed promptly after entry of the order for relief under section 701, automatically becomes the permanent trustee at the meeting of creditors pursuant to section 341, if creditors do not elect a trustee under section 702." In re Malavet (Bankr. D.P.R. 2016). Trustee elections under section 702 are rare, see id., and an election did not occur in Modi's case. Accordingly, Mr. Gordon automatically became the permanent Chapter 7 Trustee at the conclusion

15

of Modi's section 341 meeting by operation of law and through no act of his own.

Finally, Modi complains that the Trustee did not withdraw certain pleadings after he allegedly agreed to do so. Modi filed "Debtor's Withdrawal of Certain Pleadings" (Doc. No. 78) on April 7, 2023. In it, he withdrew five of his pleadings and says, "Mr. Gordon agreed to withdraw his certain objectionable pleadings and also the AP." The specific pleadings to be withdrawn by Mr. Gordon are not identified. At the April 11 hearing, Modi was in agreement with the Trustee's actions to attempt to collect the Virani debt and use those funds to settle with his primary creditor. Based on that understanding, the Trustee stated he would withdraw the AP without prejudice as well as certain other pleadings when everything was "finalized." But by the April 18 hearing, Modi wanted his case dismissed and he was no longer in agreement with the Trustee. So although the Trustee did not withdraw the pleadings Modi thinks he should, the Trustee did not oppose the dismissal of the case. The dismissal mooted the need to withdraw the pleadings and the Court dismissed the adversary proceeding. The Trustee did not act in a way to justify any sanctions.

Considering the Trustee's duties and the directions provided to trustees by the Handbook, the Court does not find the Trustee acted in bad faith. Modi may not like the manner in which the Trustee conducted his duties, but that does not mean the Trustee acted in bad faith. No basis exists for exercising the Court's inherent authority to sanction Mr. Gordon.

Conclusion

Once Modi converted his case to one under Chapter 7, the Trustee had the authority and obligation to collect all assets, investigate the transfers by Modi, and take appropriate actions to gather sufficient assets to pay creditors. That is what the Trustee did here, and no basis for sanctions exist.

Accordingly,

**IT IS ORDERED** that the Motion is **DENIED**.

**<u>END OF DOCUMENT</u>**

**Distribution List**

Girish Jashvantrai Modi
3224 River Mist Cove
Decatur, GA 30034

Neil C. Gordon
Taylor English Duma LLP
Suite 200
1600 Parkwood Circle SE
Atlanta, GA 30339

R. Jeneane Treace
Assistant United States Trustee
362 Richard Russell Bldg.
75 Ted Turner Drive, SW
Atlanta, GA 30303